**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NIARA L. WOODS | : | C.A. No.: ____2:26-cv-4455_____ |
| 6 Haws Ln Apt G-2 | : | |
| Flourtown, PA 19031, | : | ***TRIAL BY JURY DEMANDED*** |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| SCHOOL DISTRICT OF SPRINGFIELD | : | |
| TOWNSHIP | : | |
| 1901 Paper Mill Road | : | |
| Oreland, PA 19075, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

Plaintiff, Niara L. Woods, by and through her undersigned attorneys, files the within Complaint ***WITH DEMAND FOR TRIAL BY JURY*** and avers as follows:

**I.     PARTIES, JURISDICTION & VENUE**

1.     Plaintiff/Employee, Niara L. Woods, is an adult individual, domiciled at the above-captioned address.

2.     Defendant/Employer, School District of Springfield Township ("Defendant" or the "District"), is a public school district in the Commonwealth of Pennsylvania, in Montgomery County, Pennsylvania, and may be served at the above-captioned address. Springfield Township High School ("STHS") is the relevant school within the District.

3.     This Court has federal question jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII").

4.     This Court has supplemental jurisdiction over claims brought under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (the "PHRA").

5.    On December 16, 2025, Plaintiff timely filed Charge # 530-2025-07415 (the "Charge") in the Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

6.    The Charge was timely filed within 180 days, (or alternatively, 300 days) of the acts, pattern, and practices giving rise to the Charge and pled in detail herein. Plaintiff has exhausted the administrative prerequisites to suit under Title VII.

7.    On May 7, 2026, the EEOC issued a Determination and Notice of Rights. This action is timely commenced within 90 days of Plaintiff's receipt of such notice.

8.    Venue is appropriate in this Court because all relevant transactions/occurrences are within this District.

9.    At all relevant times, Defendant was an "employer" under all relevant statutes, including Title VII and the PHRA.

10.    At all relevant times, Plaintiff was an eligible employee as defined in and/or within the meaning of all relevant statutes, including Title VII and the PHRA.

## II.    FACTUAL ALLEGATIONS

11.    Plaintiff is a Black woman. Plaintiff was born in 1980 and was over 40 years old at the time of the adverse employment actions described herein.

12.    In the 2016-17 school year, Plaintiff was hired as STHS Assistant Coach in Track.

13.    In the 2018-19 school year, Plaintiff was promoted to Head Coach for Winter Track and Cross-Country.

14.    Plaintiff was the only Black female head coach in any STHS sports program.

15.    It is believed, and therefore averred, that no other Black woman held a comparable role in Defendant's coaching staff in the District.

2

16.    Although the coaching position involved nominal pay ($4,612 for the 2024-25 season), the position was of significant professional, personal, and reputational importance to Plaintiff, who had trained and built relationships with Defendant's student athletes for years. Plaintiff took great pride in her work; the program grew in significance under her coaching. Students' lives changed due to her dedication as a coach. Scholarships were earned and athletes thrived in her program.

17.    Throughout her employment, Plaintiff performed her job well, received positive performance evaluations, and had her Head Coach contract renewed for approximately seven years.

18.    Before 2023, Plaintiff had been included in the hiring process for every assistant coach in her program.

19.    This is a standard practice; head coaches are routinely involved in the hiring process for an assistant coach assigned to the head coach's program.

20.    In or about October or November 2023, Defendant, through Athletic Director Joe Ferraro ("AD Ferraro"), hired Christopher Stone ("Stone"), a White male in his 20s, as Assistant Coach for Winter Track.

21.    Defendant hired Stone without including Plaintiff in the hiring process.

22.    The failure to include Plaintiff in the hiring of Stone undermined Plaintiff's authority as head coach.

23.    Plaintiff objected to being excluded from the assistant coach hiring process.

24.    On or about November 19, 2023, Plaintiff complained to Defendant, c/o Emily Kehr, HR at the District, specifically that she suffered discrimination as an African American female coach.

3

25.    Defendant performed an investigation and conceded that AD Ferraro should have included Plaintiff in the process. None of the other complaints were addressed.  Defendant stated that Ferraro apologized, however, Ferraro did not apologize to Plaintiff.  No action was taken to remediate the discriminatory conduct.

26.    Plaintiff's complaint constituted protected activity under Title VII and the PHRA.

27.    Defendant, AD Ferraro, knew of Plaintiff's complaint.

28.    AD Ferraro held *respondeat superior* liability.

29.    The same individuals and/or departments involved in handling Plaintiff's 2023 complaint later participated in and/or influenced the decision not to renew Plaintiff's Head Coach contract.

30.    After Plaintiff complained, Defendant's treatment of Plaintiff changed materially.

31.    After Plaintiff complained, Defendant became dismissive in email responses to Plaintiff, nitpicked Plaintiff's work, started referring to Plaintiff as "combative" and began removing job responsibilities from Plaintiff.

32.    Defendant's labeling of Plaintiff, an African American woman, as "combative" was racially coded and relied upon the discriminatory stereotype commonly used to portray Black women who advocate for themselves as improperly angry, difficult, or insubordinate.

33.    For example, Plaintiff routinely petitioned for better treatment of her athletes – to assure they had proper equipment, better uniforms, buses and support.  This was so for years before her complaint of discrimination. However, after Plaintiff's complaint, that same conduct was labeled "combative" and used against Plaintiff.

34.     The November 19, 2023 complaint was a "sea change" in Defendant's attitude towards Plaintiff. Plaintiff did not change her coaching style or behavior; but from that point on, Defendant found problems with Plaintiff for doing her job.

35.     Defendant did not similarly characterize or discipline similarly situated White and/or male coaches for comparable communications or advocacy.

36.     In or about April 2025, Plaintiff received her only negative performance evaluation.

37.     Only in Plaintiff's final review did Defendant assert that Plaintiff did not get along with the Spring Track Coach and was "combative."

38.     Defendant asserted that Plaintiff improperly added additional meets to the schedule. However, coaches routinely add meets in substantially the same manner; no other coach was ever disciplined or reprimanded for this.

39.     Defendant asserted that Plaintiff violated a rule by providing uniforms to athletes for an all-star event through a parent booster fund. However, this is pretextual.  PIAA bylaws provide that students may ***not*** wear school uniforms to events of this nature.

40.     Defendant failed to provide Plaintiff the required 10-day period to discuss her negative evaluation.

41.     On or about May 26, 2025, Ferraro informed Plaintiff that her contract to serve as head coach would not be renewed.

42.     Defendant replaced Plaintiff with Stone.

43.     Defendant had created a path for Stone to assume Plaintiff's position by first bringing him into Plaintiff's program without Plaintiff's input and then non-renewing Plaintiff.

44.     Stone received more favorable treatment than Plaintiff from Defendant's administration.

45.    For example, Defendant permitted Stone to start practices at 4:00 p.m., although Defendant required practices begin at 3:00 p.m.; several coaching candidates could not take the position over the years due to the early start time, but Stone was given favorable treatment.

46.    By way of additional example, Stone missed substantial numbers of practices and meets without repercussions.

47.    Defendant provided Stone more favorable, terms, conditions, and/or privileges of employment than Plaintiff received for performing substantially equal and/or materially similar coaching work.

48.    Defendant's conduct would deter a reasonable employee from making or supporting a charge of discrimination.

49.    Defendant's stated reasons for non-renewing Plaintiff were false, pretextual, and/or mixed-motive reasons masking discrimination and retaliation based on Plaintiff's race, color, sex, and age, and because Plaintiff complained of discrimination.

50.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered severe injuries, including but not limited to lost wages, lost back pay, lost future wages, lost benefits, embarrassment, humiliation, severe emotional distress, reputational harm, loss of professional opportunities, and other damages as will become evident through discovery.

51.    By way of example, and in no way limiting the foregoing, Plaintiff had no opportunity to say goodbye to the athletes she had trained, coached, and built rapport with over the years.  She had to watch from the sidelines as seniors she trained for three years graduate. Plaintiff's dedication and coaching was an important part of her identity which was stripped away in a disgraceful fashion as a result of Defendant's discriminatory conduct.

6

52. Plaintiff is entitled to costs and reasonable attorney's fees for enforcement of her civil rights.

53. Plaintiff is entitled to equitable relief for enforcement of her civil rights, including reinstatement and/or front pay, correction or expungement of discriminatory and retaliatory records, and such other relief as the Court deems just and proper.

## III. CAUSES OF ACTION

### COUNT I: TITLE VII - RACE, COLOR, AND SEX DISCRIMINATION

54. Repeats and realleges paragraphs 1-53 as if set forth at length herein.

55. Defendant committed unlawful discrimination against Plaintiff because of Plaintiff's race, color, and sex in violation of Title VII.

56. The elements of a discrimination claim are that Plaintiff: (1) is a member of a protected class; (2) was qualified for the position she sought to retain; (3) suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

57. Plaintiff is a member of protected classes. Plaintiff is African American, Black, and female.

58. Plaintiff was qualified for the position she sought to retain. At all times material, Plaintiff was qualified and competent to serve as Head Coach for Winter Track.

59. Plaintiff suffered adverse employment actions, including but not limited to exclusion from the assistant coach hiring process, removal of responsibilities, unequal terms and conditions of employment, a negative performance evaluation, non-renewal/termination, and replacement by Stone.

60.     The adverse actions suffered by Plaintiff occurred under circumstances giving rise to an inference of intentional discrimination, including but not limited to Defendant's more favorable treatment of Caucasian and male coaches, Defendant's use of the racially coded "combative" label against Plaintiff, Defendant's replacement of Plaintiff with Stone, and Defendant's use of pretextual reasons to terminate Plaintiff.

61.     The individuals who engaged in the discriminatory conduct had authority to act on behalf of Defendant. Accordingly, Defendant is liable for such conduct.

62.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

**COUNT II: TITLE VII - RETALIATION**

63.     Repeats and realleges paragraphs 1-62 as if set forth at length herein.

64.     Defendant committed unlawful retaliatory conduct in violation of Title VII.

65.     The elements of a retaliation claim are as follows: (1) Plaintiff engaged in protected activity; (2) Defendant took an adverse employment action against Plaintiff; and (3) there was a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

66.     Plaintiff engaged in protected activity when she complained in or about November 2023 that she was not respected and was treated differently because she was an African American female coach.

67.     Defendant knew of Plaintiff's protected activity.

68.     Defendant took adverse employment actions against Plaintiff, including but not limited to dismissive treatment, nitpicking Plaintiff's work, labeling Plaintiff "combative," removing responsibilities, issuing Plaintiff her only negative performance evaluation, failing to

afford Plaintiff the required review process, non-renewing/terminating Plaintiff, and replacing Plaintiff with Stone.

69.    Defendant's adverse employment actions were taken as a direct and proximate result of Plaintiff's protected activity.

70.    The causal connection is shown by, among other things, the pattern of antagonism following Plaintiff's complaint, the involvement of the same decisionmakers and departments who handled Plaintiff's complaint, Defendant's shifting and pretextual reliance on the uniform issue, and Defendant's use of the "combative" label after Plaintiff complained.

71.    Defendant's conduct after Plaintiff's complaints, as set forth in detail above and incorporated herein by reference, constituted retaliation against Plaintiff.

72.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

**COUNT III: PHRA**

73.    Repeats and realleges paragraphs 1-72 as if set forth at length herein.

74.    The foregoing violations of federal law also constitute violations of the PHRA.

75.    Defendant discriminated against Plaintiff because of her race, color, sex, and age, and retaliated against Plaintiff because she opposed unlawful discrimination, in violation of the PHRA.

76.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, as set forth above and incorporated herein by reference.

## V.       PRAYER FOR RELIEF

WHEREFORE, Plaintiff Niara L. Woods respectfully requests this Court enter judgment in her favor and against Defendant, School District of Springfield Township, and award all relief available under the applicable laws, including but not limited to:

a. Back pay, lost wages, lost benefits, and other economic losses;
b. Front pay and/or reinstatement, to the extent available and appropriate;
c. Compensatory damages for emotional distress, humiliation, embarrassment, reputational harm, and other non-economic injuries;
d. liquidated damages in an amount equal to Plaintiff's unpaid wages, back pay, and/or other wage losses to the extent available under the Equal Pay Act, and such other liquidated damages as may be available under the applicable laws;;
e. Prejudgment interest and post-judgment interest;
f. Reasonable attorney's fees, litigation expenses, and costs of suit (including expert costs);
g. Other equitable relief necessary to make Plaintiff whole for injuries and losses not fully remedied by an award of money damages; and
h. Such other relief as this Court deems just and proper.

***TRIAL BY JURY DEMANDED***

Respectfully submitted,

CREECH & CREECH, LLC

/s/ Timothy P. Creech
TIMOTHY P. CREECH
1835 Market St., Suite 2710
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688

10

Timothy@CreechandCreech.com

DATED: